# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0197

DALE R. SHIPLEY, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 30, 2011)

*Jacques P. DePlois*, of Coos Bay, Oregon, for the appellant.

*Pamela M. Nash*, with whom *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and SCHOELEN, *Judges*.

SCHOELEN, *Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed an opinion concurring in part and dissenting in part.

SCHOELEN, *Judge*: The appellant, Dale R. Shipley, through counsel, appeals a December 3, 2008, Board of Veterans' Appeals (Board) decision in which the Board determined that he was not entitled to an effective date earlier than November 20, 2002, for service-connected post-traumatic stress disorder (PTSD). Amended Record of Proceedings (R.) at 10. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the following reasons, the Court will affirm the portion of the Board's decision finding that the appellant did not have a pending, unadjudicated claim for entitlement to VA disability benefits for PTSD when he filed a claim to reopen on November 20, 2002. However, the Court will vacate the Board's conclusion that the appellant is not entitled to an effective date earlier than

November 20, 2002, based on a finding of service connection for PTSD, and remand the matter for further proceedings consistent with this decision.

## I. BACKGROUND

The appellant had two consecutive periods of active service in the U.S. Army, one from March 1965 to April 1967 and a second from April 1967 to October 1969. R. at 896-97. Two Certificates of Release or Discharge from Active Duty, also known as Department of Defense Forms 214 (DD-214 forms), that were originally associated with the claims file show that the appellant served in Viet Nam and that he received the National Defense Service Medal, the Viet Nam Service Medal, and the Republic of Viet Nam Campaign Medal. *Id.* The DD-214 form from his first period of service reflects that he served with the 3rd Brigade, 4th Infantry Division. R. at 896. Both DD-214 forms reflect service as a cook. R. at 896-97.

In October 1994, the appellant filed a claim for entitlement to VA benefits based on PTSD. R. at 787. He also filed claims for entitlement to VA benefits based on skin cancer, chloracne, skin rash of the right foot and arms, and photophobia. *See* R. at 682. At a March 1995 VA psychiatric examination, the appellant reported that he went to the field with the 4th Infantry Division. R. at 763. He described a 1967 battle in which 617 Viet Cong and 100 Americans were killed. *Id.* He stated that he saw dead bodies and unloaded body bags. *Id.* The examiner diagnosed the appellant with moderate PTSD. R. at 765.

In an August 1995 rating decision, the regional office (RO) denied the appellant's claims for entitlement to VA benefits based on skin cancer, chloracne, a skin rash, and an eye condition. R. at 733-36. The rating decision stated that "[t]he issue of entitlement to service connection for [PTSD] is deferred for additional records from the U.S. Army and Joint Services Environmental Support Group." R. at 733. A rating specialist completed a VA Form 21-6789, Deferred Rating Decision, requesting that the appellant's asserted stressors be verified. R. at 731. In correspondence dated September 14, 1995, the RO stated that it was deferring the appellant's PTSD claim but that it had denied the appellant's claims for skin cancer, chloracne, skin rash of the right foot and arms, and eye sensitivity to light. R. at 729.

In October 1995, the appellant filed a Notice of Disagreement (NOD). R. at 710. He stated that he "disagree[d] with [the RO's] decision of Sept. 14, 1995[,] on all issues." *Id.* The RO issued a Statement of the Case (SOC) in November 1995; the SOC did not address the PTSD claim. R. at 714-25.

In an August 1996 rating decision, the RO denied the appellant's claim for entitlement to VA benefits for PTSD. R. at 695-97. The RO stated that the evidence "does not establish that a stressful experience sufficient to cause [PTSD] actually occurred." R. at 695. The RO noted that the U.S. Army and Joint Services Environmental Support Group had not been able to verify the appellant's account of service as a perimeter patrol guard in a battle that left 617 Viet Cong and 100 Americans dead. *Id.* The appellant did not file an NOD pertaining to this rating decision.

In November 2002, the appellant sought to reopen his claim to entitlement to VA benefits based on PTSD. R. at 532. He wrote that he believed that he had received the Presidential Unit Citation (PUC) for his participation in the Battle of Fire Support Base Gold – Soui Tre. R. at 479. In October 2003, the Army completed a DD Form 215 (Correction to DD Form 214). This document corrected the appellant's DD-214 form from his first period of service to reflect that he was a recipient of the PUC. R. at 434. In November 2004, the appellant's representative submitted a letter requesting that the RO consider his corrected DD-214 form. R. at 408-09. He also submitted a Report of Battles that he had obtained from a private Website. R. at 390-406. The April 1967 "Recommendation for the [PUC]" signed by Colonel Marshall Garth of the 3rd Brigade, 4th Infantry Division details how, during a March 1967 battle, "[a]ll cooks, clerks, and other available personnel . . . moved to block the penetration of the infantry's perimeter." R. at 392.

In June 2005, the appellant was granted entitlement to VA benefits based on PTSD. R. at 69. The RO stated that it

> made this decision based on your service personnel records and report of [PUC] which established a credible stressor and the diagnosis on your VA examination. Your corrected DD-214 shows that you served in Vietnam from 9-22-66 to 9-21-67, receiving the Vietnam Campaign Medal, a Vietnam Service Medal with 2 Bronze Service Stars and a [PUC]. Your service personnel records show that you were assigned to 3rd Battalion, 4th Infantry Division in Vietnam as a cook from 9-22-66 to 5-1-67. The Report of Battles shows that the 3rd Brigade, 4th Infantry Division and all assigned and attached units to include the 3rd Brigade, 4th Infantry Division received the [PUC] for their action on 3-21-67. In the write up . . . it was stated that

3

all cooks, clerks and other available personnel were moved to the perimeter to block the penetration of the enemy. Based on this evidence, your exposure to a combat stressor is conceded.

R. at 70. The appellant was awarded a 70% disability rating, effective November 20, 2002. *Id.* In April 2006, the appellant filed an NOD disagreeing with the assigned effective date of that award. R. at 53-54.

In the decision on appeal, the Board declined to award the appellant an effective date earlier than November 20, 2002, for a finding of service connection for PTSD. R. at 10. The appellant argued that his October 1994 PTSD claim was never adjudicated and that it remained pending until the RO issued its June 2005 rating decision. R. at 6. The Board rejected this argument, explaining that the August 1995 rating decision deferred the PTSD claim until further development and that the "claim remained pending until the RO explicitly denied entitlement to service connection in August 1996." R. at 6-7. The Board further noted that the appellant had failed to appeal the August 1996 decision and that it became final. R. at 7. The Board found no evidence showing that the appellant had attempted to reopen this claim prior to November 2002. *Id.* Accordingly, the Board denied an effective date earlier than November 2002. *Id.*

## II. ANALYSIS

The appellant raises two arguments in his brief. First, he contends that his October 1995 NOD placed his PTSD claim in appellate status and that, because the RO did not thereafter issue an SOC on this claim, it remained pending until it was ultimately granted in June 2005. Appellant's Amended Brief (Br.) at 7-8 (citing *Myers v. Principi*, 16 Vet.App. 228, 236 (2002)). As such, he asserts that he is entitled to an effective date back to the date he filed his original PTSD claim. *Id.* Second, he argues that he is entitled to an earlier effective date under the provisions of 38 C.F.R. § 3.156(c) (2010), a provision pertaining to reopened claims that are granted on the basis of newly acquired service department records, and that the Board erred by failing to discuss the applicability of this regulation. Appellant's Amended Br. at 12-14.

The Secretary asks the Court to affirm the Board's decision. Secretary's Br. at 14-15. As to the appellant's first argument, the Secretary contends that an NOD cannot be filed from a deferred

4

rating decision. *Id.* at 6-11. Turning to the appellant's second argument, the Secretary contends that § 3.156(c) is not applicable to this case. *Id.* at 12.

### A. Appealing from a Deferred Rating Decision

The determination of the effective date of an award is generally governed by 38 U.S.C. § 5110(a), which states that, "[u]nless specifically provided otherwise . . . , the effective date of an award based on an original claim [or] a claim reopened after final adjudication . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."

Pursuant to 38 U.S.C. § 7105(a), the filing of an NOD initiates VA appellate review, and the request for appellate review is completed by the claimant's filing of a Substantive Appeal. An NOD is "[a] written communication from a claimant . . . expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result." 38 C.F.R. § 20.201 (2010). "Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)(1)." *Beyrle v. Brown*, 9 Vet.App. 24, 28 (1996). Under 38 U.S.C. § 7105(d)(1), when a claimant files an NOD within one year of an RO decision, VA "will take such development or review action as it deems proper," and if such development does not resolve the disagreement, VA "shall prepare [an SOC]." The RO's failure to furnish an SOC upon the proper filing of an NOD prevents the underlying RO decision from becoming final. *Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995). Moreover, "once an NOD has been filed, further RO decisions, which do not grant the benefit sought, cannot resolve the appeal." *Juarez v. Peake*, 21 Vet.App. 537, 543 (2008).

The appellant argues that, by filing the October 1995 NOD in which he expressed disagreement "on all issues" addressed within an RO letter dated September 14, 1995, he initiated appellate review of his PTSD claim and the RO should then have issued an SOC so that he could perfect his appeal to the Board. Appellant's Amended Br. at 7. This argument fails, however, because a deferral does not constitute the necessary "adjudicative determination" from which an NOD may be filed. As noted above, an NOD is a written communication expressing dissatisfaction with an "adjudicative determination." 38 C.F.R. § 20.201. It follows that, before a claimant may file an NOD, there must be some "adjudicative determination" to contest. "[D]etermination" means

"[a] final decision by a court or administrative agency." BLACK'S LAW DICTIONARY 460 (7th ed. 1999). The RO's decision to defer a ruling until a later date does not constitute a final decision by the administrative agency. When the RO defers a rating decision, all factual and legal questions relevant to the claim are reserved for resolution at a later date. Deferral was especially necessary in this case, where the RO acknowledged that it did not have all of the necessary evidence to make a decision on the PTSD claim in August 1995. R. at 731. Because there is no "final decision" when the RO issues a deferred rating decision, there has been no "adjudicative determination" from which an NOD can be filed.

The appellant cites 38 C.F.R. §§ 3.103(f) and 20.1100 (2010) to support his argument that an NOD can properly be filed from a deferred rating decision. Appellant's Amended Br. at 9-10. The Court fails to see how either of these provisions has any relevance to this matter. Section 3.103(f) requires that "[t]he claimant or beneficiary . . . be notified in writing of decisions affecting the payment of benefits or granting relief." Although the issuance of a deferred rating decision by its nature has some affect on the processing of a claim, the Court does not agree that it represents a decision "affecting the payment of benefits or granting relief." The appellant has no entitlement to benefits nor has he been denied benefits until VA makes a decision on his claim. In any event, even assuming that a deferral did represent a decision affecting the payment of benefits or granting relief, § 3.103(f) is a procedural due process provision describing *notification* requirements and does not speak to a claimant's right to file an NOD from a rating deferral. Section 20.1100(a) indicates that generally a Board decision is final on the date stamped on the face of a decision; subsection (b) provides that a remand is a preliminary order that does not constitute a final decision. This regulation simply does not support the appellant's argument that a claimant can appeal from a deferred rating decision. The appellant also states that he "was clearly told that a decision had been made in his [PTSD] claim" and that he could appeal the decision to defer. *Id.* However, in making this argument, he does not give a fair and reasonable reading to the evidence. The evidence to which the appellant refers clearly indicates that a decision had not yet been made on the PTSD claim and that the RO was in the process of seeking additional information. *See* R. at 729, 733-36.

In short, the appellant could not properly file an NOD from the portion of the August 1995 RO decision deferring his PTSD claim, and he did not file an NOD from the RO decision denying his PTSD claim in August 1996. Therefore, his PTSD claim was not placed into appellate status at any time before November 20, 2002, and he did not have a claim pending when he requested that his PTSD claim be reopened on that date.

The Court notes that an appellant who feels that the deferral of a decision in his claim was not appropriate or has delayed a final decision unreasonably is not without recourse. The appropriate action would be to file a petition with the Court challenging the Secretary's delay. *Cf. DiCarlo v. Nicholson*, 20 Vet.App. 52, 56-57 (2006) (noting that a claimant may file a petition if Secretary refuses to process a pending claim); *but see Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004) (cautioning that a petition for extraordinary relief may only be granted where: (1) The petitioner lacks adequate alternative means to attain the desired relief; (2) the petitioner demonstrates a clear and indisputable right to the writ; and (3) the Court is convinced that the issuance of the writ is warranted).

## B. Applicability of § 3.156(c)

The appellant contends that the Board should have discussed whether the report detailing a recommendation for the PUC could be considered an official service department record such that he might be entitled to an earlier effective date under § 3.156(c). Appellant's Amended Br. at 12-14. The Secretary asserts that the appellant's PTSD claim was granted only after review of the corrected DD-214 form showing receipt of the PUC and that the version of § 3.156(c) that went into effect on October 6, 2006, does not contemplate corrected service department records. Secretary's Br. at 12. He notes that the appellant's DD-214 form was not amended to reflect receipt of the PUC until several years after the PTSD claim was originally denied. *Id.* Furthermore, he argues that, to the extent that the PUC recommendation narrative served as the basis for a finding of service connection, it is a document printed from a private Internet site and is not a service department record for purposes of § 3.156(c). *Id.* at 13.

After this case was submitted to a panel, the Court issued an order directing the parties to address the applicability of *Mayhue v. Shinseki*, 24 Vet.App. 273 (2011), to these proceedings. The appellant essentially argues that *Mayhue* is applicable, if it is determined that service department

7

records were the basis for the RO's finding of service connection. Appellant's Supplemental Memorandum (Supp. Memo.) of Law at 3. The Secretary reasserts that it was a corrected record – not any newly acquired service department record – that formed the basis for the finding of service connection. Secretary's Supp. Memo. of Law at 2. Alternatively, the Secretary argues, *Mayhue* is not on point because here the appellant's PTSD claim "was granted based upon the a [sic] newly-reported stressor which was corroborated following the amendment of his DD-214." *Id.* at 4.

Section 3.156(c) may apply in cases in which VA receives certain records after it has already issued a decision on a claim. Under 38 C.F.R. § 3.156(c)(1), "if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim." As part of the regulation, the Secretary has included a nonexhaustive list of records that could constitute official service department records. *Id.* However, the applicability of this regulation is tempered by subsection (2), which provides that § 3.156(c) "does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim" or because the claimant did not "provide sufficient information for VA to identify and obtain the records." 38 C.F.R. § 3.156(c)(2). "An award made based all or in part on the records identified by paragraph (c)(1) . . . is effective on the date entitlement arose or the date VA received the previously decided claim, whichever is later." 38 C.F.R. § 3.156(c)(3).

In *Mayhue*, 24 Vet.App. at 280-82, the Court recognized that § 3.156(c)(2) cannot be used to deny an earlier effective date in a newly acquired service records case where the information ultimately used to verify a purported stressor was available to VA at the time the claim was previously denied. The Court observed that it was VA's failure to use the information that it always had available, and not any inaction on the part of the veteran, that prevented the Agency from corroborating the purported stressor at an earlier date. *Id.*

In this case, VA had, at the time it initially denied the PTSD claim in August 1996, the appellant's dates of service in Viet Nam, his unit assignment, and evidence that he worked as a cook. Moreover, VA had the appellant's reported stressors, namely, taking the field with the 4th Infantry Division, being exposed to gunfire while working patrol, and being part of a battle in which 617 Viet Cong and 100 Americans were killed. R. at 763. It is therefore unclear why VA, before rendering

8

a decision in August 1996, did not obtain the PUC narrative, a report all but confirming the appellant's account of events and showing that his unit received the PUC. *See* R. at 391-92 (Report of Battles, recommending PUC for the 3rd Brigade, 4th Infantry Division, and describing how, during a battle on March 19, 1967, "[a]ll cooks, clerks, and other available personnel of the artillery battalion . . . moved to block the penetration of the infantry's perimeter"). This narrative is dated April 1967 and is presumed to have been in existence in August 1996.

The Secretary contends that an Internet printout such as the one appearing in the record cannot possibly constitute an official service department record for purposes of § 3.156(c). Secretary's Br. at 13. However, the original copy of this document likely would constitute an official service department record. Additionally, the Secretary argues that the RO ultimately found that the appellant's PTSD was service connected based, at least in part, on the corrected DD-214 form showing that he is a recipient of the PUC, and that corrected records are not contemplated by the amended version of § 3.156(c).[1] Secretary's Br. at 12; *see also* 70 Fed. Reg. at 35,389 (noting that "proposed § 3.156(c) excludes decisions based upon . . . corrected service department records because the proposed rule does not apply to 'records that VA could not have obtained . . . because the records did not exist when VA decided the claim'" (quoting § 3.156(c)(2))). However, the information that the RO obtained from the corrected DD-214 form was available in the PUC narrative, which, as described, was likely available to VA when it first decided the appellant's PTSD claim. The Secretary's argument here ignores the fact that the DD-214 form ultimately was amended as a reflection of records that had already long existed.

Based on the foregoing, it appears that § 3.156(c) is a regulation relevant to a decision concerning the effective date for service-connected PTSD under these circumstances and thus it was error for the Board not to discuss its applicability. *See Robinson v. Peake*, 21 Vet.App. 545, 553 (2008) (requiring the Board to consider all theories of entitlement raised by the claimant or by the evidence of record). Because the Board has not yet made any factual findings pertinent to the application of this regulation, the appropriate remedy is for the Court to vacate the Board's

---

[1]For this case, the Court need not decide whether § 3.156(c) permits an earlier effective date based on corrected records or the significance of the change in the language of amended § 3.156(c). However, the Court notes that a claimant seeking to receive an earlier effective date for an entitlement based on corrected service records may be able to receive an earlier date under the provisions of 38 U.S.C. § 5110(i) and 38 C.F.R. § 3.400(g) (2010).

conclusion that the appellant cannot receive an effective date earlier than November 20, 2002, for his service-connected PTSD, and remand the matter so that the Board may address the applicability of § 3.156(c) in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1264 (Fed. Cir. 2000) (recognizing that the Court is not the appropriate forum for initial factfinding).

### III. CONCLUSION

After consideration of the appellant's and the Secretary's pleadings, and a review of the record, the portion of the Board's December 3, 2008, decision that determined the appellant did not have a pending, unadjudicated claim for entitlement to VA benefits for PTSD when he sought to reopen this claim on November 20, 2002, is AFFIRMED. However, the Court will VACATE the Board's determination that the appellant is not entitled to an effective date earlier than November 20, 2002, for his service-connected PTSD, and REMAND the matter for proceedings consistent with this decision.

HAGEL, *Judge*, concurring in part and dissenting in part: I concur with the majority's opinion, save for one issue: the appropriate remedy to be afforded the appellant.

At issue in this case is the appropriate effective date for the disability compensation benefits awarded the appellant following the regional office's June 2005 determination that his PTSD is service connected. As with all of its determinations, when establishing the appropriate effective date for an award of benefits, the Board must provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1). The Board's ultimate determination of the proper effective date is a finding of fact that the Court reviews under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *see Hanson v. Brown*, 9 Vet.App. 29, 32 (1996)*; Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). Pursuant to statute, this Court is empowered to "set aside or reverse" any clearly erroneous "finding of material fact adverse to the claimant made in reaching a decision in a case before [VA] with respect to benefits under laws administered by the Secretary." 38 U.S.C. § 7261(a)(4).

10

As the majority concludes and I agree, 38 C.F.R. § 3.156(c) was clearly implicated by the facts of this case and the Board should have expressly discussed its provisions in determining the appropriate effective date for the benefits awarded the appellant. Further, I acknowledge that when the Board provides an inadequate statement of the reasons or bases for its decision by failing to discuss an applicable provision of law, the appropriate remedy is generally remand. *See, e.g.*, *Tucker v. West*, 11 Vet.App. 369, 374 (1998) ("[W]here the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, a remand is the appropriate remedy.")

The rationale for this rule is essentially two-fold, although these reasons are interrelated. The first rationale involves a matter of practicality—when the Board fails to adequately explain its reasoning, its decision typically will not be sufficiently complete to facilitate judicial review or inform the appellant of the Board's reasoning, thereby necessitating a remand for the purpose of obtaining a more thorough explanation. *See Pefianco v. Brown*, 5 Vet.App. 226, 229 (1993) (concluding that the Board's decision was "inadequate to enable appellant to understand the basis for the Board's decision, as well as to facilitate review in this Court" and remanding the case for further Board explanation).

The second rationale is premised on the nature of appellate courts, which "are not appropriate fora for initial fact finding." *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000). In most instances, when the Board commits a reasons-or-bases error it fails to make factual determinations necessary to the proper adjudication of the veteran's claim. Accordingly, because, as an appellate court, this Court "is not a trier of fact and is not in a position to make . . . factual determination[s]," remand for the purpose of factfinding will usually be the appropriate remedy. *Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996).

In my estimation, the present case presents a unique set of circumstances. As explained in the majority opinion, the Board committed a technical reasons-or-bases error in the decision on appeal by failing to consider § 3.156(c) when establishing an effective date. As noted above, the proper remedy for this type of error would ordinarily be remand; however, in this case, neither rationale for the general rule requiring remand is implicated. Despite the Board's failure to discuss § 3.156(c), the fact remains that VA made all of the individual, predicate factual findings that are

11

necessary to prove, as a matter of law, that (1) § 3.156(c) applies in this case and (2) by application of that regulation, the appellant is entitled to an earlier effective date. Accordingly, I conclude that the appellant is entitled to an effective date earlier than November 20, 2002, for his service-connected PTSD. Because "reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision," *Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (citing *Johnson v. Brown*, 9 Vet.App. 7, 10 (1996)), I would conclude that the Board's finding to the contrary was clearly erroneous, reverse that determination, and remand this matter with instructions to assign an earlier effective date in accordance with § 3.156(c)(3). *See Harder v. Brown*, 5 Vet.App. 183, 189 (1993) (reversing Board finding that appellant's knee condition was not secondarily service connected because "there [wa]s no plausible basis for [that] decision").

Section 3.156(c) requires VA to reconsider finally decided claims whenever "VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim." 38 C.F.R. § 3.156(c)(1). Because, in these situations, the provision mandates reconsideration, rather than reopening, of the previously denied claim, any award of benefits premised on such records will be deemed effective as of "the date entitlement arose or the date VA received the previously denied claim, whichever is later," unless another provision provides otherwise. 38 C.F.R. § 3.156(c)(3). The regulation also provides a nonexhaustive list of qualifying records, including "[s]ervice records that are related to a claimed in-service event, injury, or disease, regardless of whether such records mention the veteran by name, as long as the other requirements of paragraph (c) of [§ 3.156] are met." 38 C.F.R. § 3.156(c)(1)(i).

In the present case, the Secretary argues that subsection (c)(1)(i) of § 3.156 was inapposite and the Board was therefore not required to discuss the regulation because the award of benefits was based on the corrected DD-214 form (which was not in existence at the time of the previous denial) and an Internet printout, not service department records related to an in-service event.

First, with regard to the corrected DD-214 form, although, in reaching its decision, the regional office clearly relied on it in part, § 3.156(c) entitles a claimant to an earlier effective date whenever the award of benefits is "made based all *or in part* on" a newly associated service department record. 38 C.F.R. § 3.156(c)(3) (emphasis added). Accordingly, if the regional office

12

otherwise based its decision on a newly associated service department record, § 3.156(c) was still applicable.

To that end, a review of the regional office's June 2005 rating decision, in which the appellant was first awarded disability compensation benefits for PTSD, indicates that, as a matter of fact, the regional office found that the Internet printout *was* a service personnel record. In that rating decision, the evidence the regional office considered was listed in bullet-point fashion, including a "Report of Battles, 2nd Battalion, 22nd infantry, received November 23, 2004." R. at 70. Under the heading "REASONS FOR DECISION," the regional office stated that it based its finding that the appellant's PTSD was service connected on his "service personnel records and report of Presidential Unit Citation[,] which established a credible stressor." R. at 70. The central record discussed by the regional office was the "Report of Battles," which indicated "that the 3rd Brigade, 4th Infantry Division and all assigned and attached units to include the 3rd Battalion received the Presidential Unit Citation" and that "all cooks, clerks and other available personnel were moved to the perimeter to block the penetration of the enemy" during a battle. R. at 70.

Thus, although there is little doubt that the document to which the regional office referred was the Internet printout containing the April 1967 "Recommendation for the Presidential Unit Citation" that was submitted by the appellant's counsel in November 2004, it is apparent that, rather than attempt to obtain the original document, the regional office accepted the Internet printout as an authentic service personnel record or a reliable copy thereof. The regional office's finding that the Internet printout constituted a service personnel record was a finding of fact favorable to the appellant that the Court may not unsettle on appeal. *McClain v. Nicholson*, 21 Vet.App. 319, 322 (2007). Accordingly, based on the facts found by the regional office, which were not disturbed by the Board in the decision now on appeal, it cannot be disputed that § 3.156(c) was implicated.

There are, however, two exceptions to the general principles of § 3.156(c). Both are contained in § 3.156(c)(2), which provides that the provisions outlined above do not apply

> to records that VA could not have obtained when it decided the claim [(1)] because the records did not exist when VA decided the claim, or [(2)] because the claimant failed to provide sufficient information for VA to identify and obtain the records from the respective service department, the Joint Services Records Research Center, or from any other official source.

13

Based on the factual findings made by the Agency decisionmakers, it is again apparent that, as a matter of law, the first exception could have no applicability in the present case because the Report of Battles was in existence at the time the regional office last denied the appellant's PTSD claim in August 1996. Again, the regional office found that the Internet printout, referred to in its June 2005 rating decision as a "Report of Battles," was a service personnel record. That document clearly bears the date April 1, 1967. R. at 390. It is therefore evident that it was in existence at all times relevant to this appeal.

This Court recently examined the second exception contained in § 3.156(c)(2) in *Mayhue v. Shinseki*, 24 Vet.App. 273 (2011). *Mayhue* involved a veteran whose claim for post-traumatic stress disorder had initially been denied because the claimed stressors were not verifiable with the information he provided. 24 Vet.App. at 275. Years after this decision became final, his claim was reopened and granted on the basis of service department records located by the U.S. Armed Services Center for Research of Unit Records indicating that, during the period the veteran served in Viet Nam, his unit had been stationed at a base that came under enemy attack. *Id.* at 275-76. Although this stressor was not previously claimed by the veteran, the regional office conceded it and awarded him benefits, but only as of the date he provided his unit information and dates of service in Viet Nam in a post-traumatic stress disorder questionnaire, nearly six years after his initial claim had been filed. *Id.* at 276.

On appeal, the Court concluded that the veteran was entitled to an effective date as of the date he filed his original claim because the grant of benefits was based on newly associated service department records, *see* 38 C.F.R. § 3.156(c)(1), and the information needed to obtain these records—the veteran's unit number and dates of service in Viet Nam—had been part of the veteran's claims file all along. *Mayhue*, 24 Vet.App. at 280. Accordingly, the Court explained that "VA's failure to verify [the veteran's] stressor was the result of an administrative error in locating his unit records," not the veteran's failure to supply sufficient information. *Id.*

In the present case, it is undisputed that, at the time the appellant's claim was previously denied for lack of a verifiable, in-service stressor, VA had before it the appellant's dates of service in Viet Nam and his unit information. Further, and unlike in *Mayhue*, here the appellant had gone a step further by providing a statement describing the stressor that ultimately was verified in the

Report of Battles, even accurately reporting that the described events occurred during "the first part of 1967." R. at 763. Accordingly, and based on the holding of *Mayhue*, I conclude that, as a matter of law, VA's failure to verify the appellant's stressor under these circumstances was the result of VA's administrative error, as opposed to a failure on the appellant's part to supply sufficient information. Accordingly, I conclude, as a matter of law, that the second exception found in § 3.156(c)(2) is not applicable here.

Because the incontestable facts found by Agency decisionmakers below lead to only one plausible conclusion—that § 3.156(c) applies—I would reverse the Board decision that the appellant is not entitled to an earlier effective date and remand this matter with instructions to institute an effective date for his award of benefits in accordance with the provisions of § 3.156(c)(3).