# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0014

SAMUEL L. MAYHUE, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided                    January 18, 2011 )

*Kenneth M. Carpenter,* of Topeka, Kansas, was on the brief for the appellant.

*Nathan Paul Kirschner*, with whom *Will A. Gunn*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, and *David L. Quinn*, Deputy Assistant General Counsel, all of Washington, DC, were on the brief for the appellee.

Before HAGEL, MOORMAN, and LANCE, *Judges*.

HAGEL, *Judge*:  Samuel L. Mayhue appeals through counsel a September 12, 2008, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) an earlier effective date for service-connected post-traumatic stress disorder, (2) a higher initial disability rating for post-traumatic stress disorder, and (3) an earlier effective date for a total disability rating based on individual unemployability.  Record (R.) at 3-27.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the September 2008 Board decision.  Because the Board misapplied a regulation when determining the effective date for Mr. Mayhue's service-connected post-traumatic stress disorder, and because the Board mischaracterized Mr. Mayhue's request for a total disability rating based on individual unemployability as a claim for an increased disability rating, the Court will vacate the September 12, 2008, Board decision on these issues and remand the matters for further development and readjudication consistent with this decision.  However, because the Board's failure to apply 38 C.F.R. § 4.3 was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and because the Board provided an adequate statement

of reasons or bases for denying Mr. Mayhue a 100% disability rating for post-traumatic stress disorder, the Court will affirm that portion of the Board decision.

## I. FACTS

Mr. Mayhue served on active duty in the U.S. Army from April 1968 to February 1970, including service in Viet Nam. In November 1994, Mr. Mayhue submitted an initial claim for VA benefits for post-traumatic stress disorder. In February 1995, a VA regional office denied the claim because Mr. Mayhue failed to attend a scheduled VA medical examination and "failed to provide specific information concerning specific traumatic incidents in service which produced the stress that resulted in the claimed post-traumatic stress disorder." R. at 1675. In May 1995, Mr. Mayhue was provided with a VA medical examination where he described three traumatic events from his service in Viet Nam: (1) Mr. Mayhue let a friend sleep in his bed one night while he was on guard duty and that night his friend was "blown up and killed" when the area containing his bed was shelled (R. at 1795-96); (2) Mr. Mayhue was attacked while on "road duty" and he fled and hid rather than fighting with the rest of his group, many of whom were injured (R. at 1796); and (3) Mr. Mayhue pushed a Vietnamese child who had explosives "tied all over his body" off of the lead truck in a convoy and watched the child "literally disintegrate[]" in the explosion (R. at 1796). In August 1995, the regional office once again denied Mr. Mayhue's claim for benefits for post-traumatic stress disorder, explaining that, "[a]lthough there is indication of possible stressor(s) in service indicated in the exam report, the information provided [to] the examiner is not capable of verification[;] that is[,] specific names, dates, and places were not provided." R. at 1664. Mr. Mayhue did not appeal this decision and it became final.

In September 2000, Mr. Mayhue requested to reopen his previously denied claim for benefits for post-traumatic stress disorder. In September 2001, the regional office denied Mr. Mayhue's claim to reopen because it found that he had not submitted new and material evidence and had failed to complete and return a stressor questionnaire. In April 2002, Mr. Mayhue submitted a completed stressor questionnaire, which included his unit information and descriptions of the stressors reported in the May 1995 VA medical examination. In August 2002, Mr. Mayhue submitted an additional statement that, during service, he witnessed a collision between a piece of heavy machinery and a taxi cab that decapitated a Vietnamese woman and that he was caught unarmed in the middle of an

2

ensuing firefight. However, in November 2002, the regional office again denied his claim for benefits for post-traumatic stress disorder because "the statements [he] recently submitted about events in Viet[ Nam] are not specific enough to identify a particular event that could be corroborated or the subject of a search for corroboration." R. at 1522. In November 2003, Mr. Mayhue appealed this decision. In March 2005, the United States Armed Services Center for Research of Unit Records reported that it was unable to verify the stressors identified by Mr. Mayhue in the April 2002 stressor questionnaire or the August 2002 addendum to the questionnaire. However, the Center for Research of Unit Records reported that: "We were unable to locate unit records submitted by the 69th Engineer Battalion (69th Engr Bn) during the time period provided. However the 369th Signal Battalion (369th Sig Bn) identified attacks at Can Tho, the base camp of the 69th Engr Bn during Mr. Mayhue's Viet[ Nam] tour." R. at 322. Based on this information, in April 2005, the regional office granted Mr. Mayhue's claim for benefits for post-traumatic stress disorder, awarding him a 50% disability rating with an effective date of September 5, 2000, the date he requested to reopen his previously denied claim.

In September 2005, Mr. Mayhue filed a Notice of Disagreement with this decision, asserting that he was entitled to (1) a higher initial disability rating for his service-connected post-traumatic stress disorder; (2) an effective date of November 15, 1994, for that award; and (3) a total disability rating based on individual unemployability. In December 2005, Mr. Mayhue submitted evidence that demonstrated that he had not been able to maintain employment since June 2003 and that he had not been employed at all since April 2005. In April 2006, the regional office denied entitlement to a total disability rating based on individual unemployability. After holding an informal conference with Mr. Mayhue's representative, the regional office issued a Statement of the Case in May 2006 that increased his initial schedular rating for post-traumatic stress disorder to 70% and denied entitlement to an earlier effective date. Also in May 2006, the regional office issued a separate decision that awarded Mr. Mayhue a total disability rating based on individual unemployability with an effective date of April 1, 2005, because Mr. Mayhue "specifically indicated [he] became too disabled to work due to symptoms of [post-traumatic stress disorder] effective '04/05.'" R. at 129. In July 2006, Mr. Mayhue perfected his appeal.

In the September 2008 decision on appeal, the Board denied entitlement to an earlier effective date for his service-connected post-traumatic stress disorder, a higher initial disability

rating for that disorder, and an earlier effective date for his total disability rating based on individual unemployability. With regard to the earlier effective date for post-traumatic stress disorder, the Board applied 38 C.F.R. § 3.156(c)(2) and found that, because Mr. Mayhue had not provided sufficient information to VA to verify his stressor until September 5, 2000, he was precluded from seeking an earlier effective date under 38 C.F.R. § 3.156(c)(1). In addition, the Board found that Mr. Mayhue's post-traumatic stress disorder "most closely satisfies the 70[%] rating criteria." R. at 25. Finally, the Board concluded that Mr. Mayhue was not entitled to an effective date for his total disability rating based on individual unemployability prior to April 1, 2005, because "the evidence does not show that he was totally unable to secure or maintain gainful employment as a result of his service-connected disabilities" prior to that date. R. at 16.

On appeal, Mr. Mayhue argues that the Board misapplied 38 C.F.R. § 3.156(c) in determining his effective date for post-traumatic stress disorder. Appellant's Brief (Br.) at 5-9. Mr. Mayhue also contends that the Board failed to apply the benefit of the doubt rule contained in 38 C.F.R. § 4.3 to his claim for a higher initial disability rating for post-traumatic stress disorder. *Id.* at 10-13. Moreover, Mr. Mayhue asserts that the Board did not provide an adequate statement of reasons or bases for its decision to deny him a 100% disability rating for post-traumatic stress disorder because the decision "fails to address why [Global Assessment of Functioning] scores representing serious symptoms of social and occupational impairment did not support a 100% rating."[1] *Id.* at 16, 13-17. Finally, Mr. Mayhue argues that the Board failed to apply 38 C.F.R. § 3.156(b) when it treated his claim for a total disability rating based on individual unemployability "as different from his claim for a higher initial rating" for post-traumatic stress disorder. *Id.* at 17, 17-19.

In response, the Secretary argues that the Board's decision should be affirmed because Mr. Mayhue has not carried his burden of demonstrating prejudicial error for any of his claims. Secretary's Br. at 3-15. Mr. Mayhue's reply brief reiterates his arguments and asserts that the Court

---

[1] A Global Assessment of Functioning score represents "the clinician's judgment of the individual's overall level of functioning" and is "useful in planning treatment and measuring its impact[ ] and in predicting outcome." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994); *see Richard v. Brown*, 9 Vet.App. 266, 267 (1996).

should apply the de novo standard of review to all issues on appeal because they are questions of law, not fact. Appellant's Reply Br. at 2-3.

## II. ANALYSIS

### A. 38 C.F.R. § 3.156(c)

Mr. Mayhue argues that the Board misapplied 38 C.F.R. § 3.156(c) in determining his effective date for post-traumatic stress disorder. Specifically, he asserts that the amended version of § 3.156(c) should not apply retroactively, or alternatively, if the amended version of § 3.156(c) does apply, that he does not fall within the purview of § 3.156(c)(2).

### 1. Effective Date for a Reconsidered Claim

To address Mr. Mayhue's arguments, the Court must first examine the history of § 3.156(c) and other related effective date regulations. At the time that Mr. Mayhue submitted the stressor questionnaire and addendum to the questionnaire, § 3.156(c) provided:

> Where the new and material evidence consists of a supplemental report from the service department, received before or after the decision has become final, the former decision will be reconsidered by the adjudicating agency of original jurisdiction. This comprehends official service department records which presumably have been misplaced and have now been located and forwarded to the Department of Veterans Affairs. Also included are corrections by the service department of former errors of commission or omission in the preparation of the prior report or reports and identified as such. . . . Where such records clearly support the assignment of a specific rating over a part or the entire period of time involved, a retroactive evaluation will be assigned accordingly except as it may be affected by the filing date of the original claim.

38 C.F.R. § 3.156(c) (2002). At that time, "§ 3.400(q)(2) govern[ed] the effective date of benefits awarded when VA reconsider[ed] a claim based on newly discovered service department records." New and Material Evidence, 70 Fed. Reg. 35,388, 35,388 (proposed June 20, 2005). Read together, §§ 3.156(c) and 3.400(q)(2) provided that the effective date for an award of benefits based on newly discovered service department records that were previously unavailable "may relate back to the date of the original claim or date entitlement arose even though the decision on that claim may be final under [38 C.F.R.] § 3.104." *Id.*

In June 2005, the Secretary proposed to amend § 3.156(c) "to establish clearer rules regarding reconsideration of decisions on the basis of newly discovered service department records"

5

and "to include the substance of current 38 C.F.R. 3.400(q)(2) in revised § 3.156(c)." *Id.* Specifically, the Secretary proposed to clarify "VA's current practice regarding newly received service department records" by removing the "new and material evidence" requirement in § 3.156(c), elaborating on the definition of "service department records" to include unit records and declassified service records, removing the apparent limitation that the service department records be "misplaced," and eliminating the requirement to submit a supplemental report from the service department as a prerequisite to reconsideration and retroactive evaluation of disability. *Id.* at 35,388-89. Of particular importance to this appeal, the Secretary also "revised" § 3.156(c) by adding § 3.156(c)(1), which provides:

> Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim, notwithstanding paragraph (a) of this section.

38 C.F.R. § 3.156(c)(1) (2010).[2] In the proposed rule, the Secretary explained that § 3.156(c)(1) specifically applied to "unit records, such as those obtained from the Center for Research of Unit Records (CRUR) that pertain to military experiences claimed by a veteran. Such evidence may be particularly valuable in connection with claims for benefits for post traumatic stress disorder." 70 Fed. Reg. at 35,388. The Secretary then renumbered § 3.400(q)(2) as § 3.156(c)(3), which provided that the effective date for an award based on § 3.156(c)(1) is "the date entitlement arose or the date VA received the previously decided claim, whichever is later, or such other date as may be authorized by the provisions of this part applicable to the previously decided claim." 38 C.F.R. § 3.156(c)(3) (2010); *see also* 70 Fed. Reg. at 35,389 ("Benefits awarded upon reconsideration of a claim . . .under current § 3.156(c) are effective on the dates specified in current § 3.400(q)(2). Because we propose to include [this rule] in § 3.156(c), we additionally propose to remove that effective date provision from current § 3.400(q).").

These amendments were *not* intended to be substantive changes to VA's well-established practice of reconsidering claims based on newly discovered service department records and

---

[2] Paragraph (a), which is not relevant here, provides that "a claimant may reopen a finally adjudicated claim by submitting new and material evidence" and defines "new evidence" and "material evidence." 38 C.F.R. § 3.156(a) (2010).

assigning an effective date as early as the date that the initial claim was filed. As the Secretary explained: "In practice, when VA receives service department records that were unavailable at the time of the prior decision, VA may reconsider the prior decision, and the effective date assigned will relate back to the date of the original claim, or the date entitlement arose, whichever is later." *Id*. In the final rule, the Secretary reiterated his intention to merely clarify VA's current practice: "[T]he purpose of this rule is to clarify long-standing VA rules . . . which authorize VA to award benefits retroactive to the date of a previously decided claim when newly discovered service department records are received." New and Material Evidence, 71 Fed. Reg. 52,455, 52,455 (Sept. 6, 2006).

Moreover, in *Vigil v. Peake*, the Court explained that "the Secretary revised § 3.156(c) with a stated purpose of, inter alia, clarifying the regulation to reflect current practices." 22 Vet.App. 63, 65 (2008). The Court also noted that, "[a]t oral argument, the Secretary agreed that his clarifying statements in the proposed rule should govern the interpretation of the pre-amended § 3.156(c) wherever relevant in this case." *Id*. The Court then applied the clarifying statements in the proposed rule and held that pre-amended § 3.156(c), like amended §§ 3.156(c)(1) and (c)(3), "authorizes an effective date [for a reconsidered claim based on newly discovered service department records] as early as the date of the original claim up to the date of the claim to reopen." *Id*. Consequently, the Court concludes that, under either pre-amendment or amended § 3.156(c), a claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim.

### 2. 38 C.F.R. § 3.156(c)(2)

Having determined that Mr. Mayhue may be entitled to an earlier effective date for his claim for benefits for post-traumatic stress disorder under either pre-amendment or amended § 3.156(c), the Court next addresses the parties arguments regarding the applicability of 38 C.F.R. § 3.156(c)(2). Section 3.156(c)(1) is limited by § 3.156(c)(2), which provides:

> Paragraph (c)(1) of this section does not apply to records that VA could not have obtained when it decided the claim because the records did not exist when VA decided the claim, *or because the claimant failed to provide sufficient information for VA to identify and obtain the records* from the respective service department, the Joint Services Records Research Center, or from any other official source.

38 C.F.R. § 3.156(c)(2) (2010) (emphasis added). As the Secretary explained in the proposed rule amending § 3.156(c), "[t]his limitation would allow VA to reconsider decisions and retroactively

7

evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government, but limited by the extent to which the claimant has cooperated with VA's efforts to obtain these records." 70 Fed. Reg. at 35,389.

Although the parties disagree about whether § 3.156(c)(2) applies retroactively, the Court declines to address this argument. Even assuming the Secretary's view that § 3.156(c)(2) applies retroactively or that it codified VA's long-standing practice of limiting reconsideration of claims based on a claimant's lack of cooperation–the view *least* favorable to the veteran–the Court finds that § 3.156(c)(2) was not for application in this case and, therefore, the Board erred in applying it. Specifically, the Board applied § 3.156(c)(2) and concluded that Mr. Mayhue was not entitled to an effective date for benefits for post-traumatic stress disorder earlier than September 5, 2000, because "[u]ntil that date, [he] had failed to provide sufficient information for VA to identify and obtain the service department records that could verify his in-service stressor, despite being asked for this information and repeatedly being informed that his claim had been denied due to his failure to submit this information." R. at 14. The Board further explained that the information he provided with his request to reopen his previously denied claim for post-traumatic stress disorder, which VA used to verify his stressor, "included his unit assignment, his dates and locations of service in Viet[ Nam], and a detailed description of his duties and experiences while in Viet[ Nam]." *Id*. The Board then concluded that this information "allowed for corroboration of his combat service through service department research." *Id*.

The Court acknowledges that Mr. Mayhue did not comply with VA's repeated requests to submit additional information to verify his claimed stressors, including witnessing his friend's death, fleeing from an attack while on road duty, pushing a Vietnamese child off of a truck and watching the child explode, and witnessing the decapitation of a Vietnamese woman by heavy machinery. However, VA ultimately awarded Mr. Mayhue benefits for post-traumatic stress disorder based on attacks on the base camp where his unit was stationed in Viet Nam, not on any of the above-mentioned stressors. Specifically, VA stated:

> Since the [Center for Research of Unit Records] verified that the 369th Signal Battalion was subjected to enemy attacks at Can Tho, which was the base camp of the 69th Engineering Battalion during the time you were there, it is determined that you were indeed subjected to these attacks also. Accordingly, under these circumstances, service connection for [post-traumatic stress disorder] is granted.

8

R. at 318.

The information that the Center for Research of Unit Records ultimately used to verify Mr. Mayhue's stressor–i.e., his unit number and the dates of his duty in Viet Nam–was always a part of the claims file. *See* R. at 332 (personnel file stating that Mr. Mayhue was stationed in Viet Nam with the 69th Engineering Battalion from March 1, 1969, to February 17, 1970); *see also* R. at 1674 (December 27, 1994, internal VA request for Mr. Mayhue's personnel file). Therefore, notwithstanding the fact that Mr. Mayhue did not cooperate fully with VA's requests for information to verify *other* claimed stressors, VA's failure to verify his stressor was the result of an administrative error in locating his unit records. As the Secretary stated in the proposed rule amending § 3.156(c), the reason VA reconsiders decisions based on newly discovered service department records is "that a claimant should not be harmed by an administrative deficiency of the government." 70 Fed. Reg. at 35,389. Such an administrative deficiency occurred in the instant case and predated Mr. Mayhue's failure to cooperate with VA. Moreover, the information contained in the claims file at the time of the initial claim was ultimately sufficient to verify Mr. Mayhue's stressor. Therefore, it was VA's administrative error in failing to verify Mr. Mayhue's stressor with the information it had at the time of his initial claim, not Mr. Mayhue's subsequent failure to provide additional information sufficient to verify *other* claimed stressors, that prevented VA from verifying his stressor until March 2005. Consequently, the Board erred when it applied § 3.156(c)(2), and the Court will therefore vacate and remand that portion of the Board's decision for readjudication consistent with this decision.

## B. 38 C.F.R. § 3.156(b)

Mr. Mayhue next argues that the Board failed to apply 38 C.F.R. § 3.156(b) when it treated his request for a total disability rating based on individual unemployability "as different from his claim for a higher initial rating" for post-traumatic stress disorder. Appellant's Br. at 17; *see also* 38 C.F.R. § 3.156(b) (2010) ("New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed . . . , will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.").

Mr. Mayhue is correct that a request for a total disability rating based on individual unemployability "is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability." *Rice v. Shinseki,* 22 Vet.App. 447, 453 (2009) (per curiam). In the instant case, Mr. Mayhue requested that his previously denied claim for benefits for post-traumatic stress disorder be reopened in September 2000, which was eventually granted in April 2005 based on information received from the Center for Research of Unit Records. In September 2005, during the one-year appeal period following the decision awarding Mr. Mayhue an initial disability rating for post-traumatic stress disorder, Mr. Mayhue filed a Notice of Disagreement that asserted for the first time that he was entitled to a total disability rating based on individual unemployability based on his service-connected post-traumatic stress disorder. In December 2005, Mr. Mayhue submitted new evidence that demonstrated that he had not been able to maintain employment since June 2003 and that he had not been employed at all since April 2005. After further development, in May 2006 the regional office awarded Mr. Mayhue a total disability rating based on individual unemployability with an effective date of April 1, 2005, finding that the date he "became too disabled to work due to symptoms of [post-traumatic stress disorder]." R. at 129. In July 2006, Mr. Mayhue completed his appeal challenging the initial rating and effective date for his post-traumatic stress disorder and the effective date of his total disability rating based on individual unemployability for post-traumatic stress disorder. In a September 2008 decision, now on appeal, the Board denied these claims.

As in *Rice*, this procedural history demonstrates that Mr. Mayhue's request for a total disability rating based on individual unemployability was part of his *initial* application for benefits for post-traumatic stress disorder, not a part of a new claim for *increased* compensation. *See* 22 Vet.App. at 453-54. Because the evidence of unemployability was submitted to VA within one year of the April 2005 regional office decision granting benefits for post-traumatic stress disorder, it is considered when determining the appropriate rating to be assigned for his service-connected post-traumatic stress disorder; it is *not* a separate claim for increased compensation, but is evidence that must be considered in the adjudication of the original claim when determining the proper rate of disability compensation. Moreover, "[n]ew evidence that shows unemployability relating to the underlying condition during the pendency of the original claim is material on its face," and Mr.

10

Mayhue submitted precisely this type of evidence in December 2005. *Id.* at 454. Accordingly, the Board was required to apply 38 C.F.R. § 3.156(b). As the Court stated in *Rice*:

> When entitlement to [a total disability rating based on individual unemployability] is raised during the adjudicatory process of the underlying disability or during the administrative appeal of the initial rating assigned for that disability, it is part of the claim for benefits for the underlying disability. And, when it is raised during the one-year appeal period following a decision on the claim, VA is required to consider the potential applicability of 38 C.F.R. § 3.156(b).

22 Vet.App. at 454.

Here, the Board mischaracterized Mr. Mayhue's request for a total disability rating based on individual unemployability as a claim for an increased rating. As a result, the Board limited its examination of the evidence of record pertaining to this request to the one-year period prior to September 1, 2005, the date that Mr. Mayhue first raised the issue of entitlement to a total disability rating based on individual unemployability. However, because Mr. Mayhue's request for a total disability rating based on individual unemployability was part of his *initial* application for benefits for post-traumatic stress disorder, the Board was required to consider evidence of unemployability as far back as the date of the underlying initial claim, i.e., as far back as September 2000 when he requested that VA reopen his previously denied claim. *See Rice*, 22 Vet.App. at 456-57; *see also* 38 U.S.C. § 5110(a) ("[T]he effective date of an award based on an original claim . . . shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor."); 38 C.F.R. § 3.400(b)(2)(I) (2010). Consequently, the Board's failure to consider the evidence of record of Mr. Mayhue's inability to maintain employment between September 2000 and April 2005 was prejudicial error. *See* R. at 152 (statement describing Mr. Mayhue's employment between June 2003 and April 2005); R. at 155 (VA form detailing Mr. Mayhue's employment since 2000); *see also* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004). The Court will therefore vacate that portion of the Board's decision that denied entitlement to an earlier effective date for a total disability rating based on individual unemployability and remand the matter for readjudication consistent with this decision.

11

## C. Reasonable Doubt

Mr. Mayhue next contends that the Board failed to apply 38 C.F.R. § 4.3 to his claim for a higher initial disability rating for post-traumatic stress disorder. Appellant's Br. at 10-13; Appellant's Reply Br. at 8-10. Specifically, he argues that the Board "render[ed] § 4.3 meaningless" by applying "the general benefit of the doubt provisions under 38 U.S.C. § 5107(b)" instead of § 4.3. Appellant's Reply Br. at 10. The Court disagrees.

Section § 4.3 in pertinent part provides: "When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. See § 3.102 of this chapter." 38 C.F.R. § 4.3 (2010). Section 3.102 defines the term "reasonable doubt" as used in § 4.3 as doubt "which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim." 38 C.F.R. § 3.102 (2010); *see Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2001) (stating that § 3.102 "restates" the provisions of 38 U.S.C. § 5107(b) (benefit of the doubt) in terms of "reasonable doubt"). Therefore, contrary to Mr. Mayhue's assertion, where, as here, the Board concludes that the evidence is not in equipoise, specific consideration of § 4.3 is not warranted. *See Schoolman v. West*, 12 Vet.App. 307, 311 (1999) (explaining that where the preponderance of the evidence is against an appellant's claims, "the benefit of the doubt doctrine does not apply").

In the instant case, the Board found that "the preponderance of the evidence is against granting an initial rating in excess of 70 percent." R. at 19. In support of this finding, the Board thoroughly discussed Mr. Mayhue's disability picture and adequately explained why his symptoms "most closely satisf[y] the 70 percent rating criteria." R. at 25. In light of the Board's thorough consideration of the evidence of record and Mr. Mayhue's statement that he "is not contesting the Board's finding that there was a preponderance of evidence against an initial rating in excess of 70 percent," the Board's failure to apply § 4.3 was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Gilbert*, 1 Vet.App. at 58.

## D. Reasons or Bases

Finally, Mr. Mayhue argues that the Board failed to provide an adequate statement of reasons or bases for its decision to deny him a 100% disability rating for post-traumatic stress disorder because the decision "fails to address why [Global Assessment of Functioning] scores representing

serious symptoms of social and occupational impairment did not support a 100% rating." Appellant's Br. at 16. However, the record does not support this contention.

Section 4.7, title 38 of the Code of Federal Regulations provides that, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." The Board acknowledged this regulation, then painstakingly described Mr. Mayhue's medical history and disability picture, including his Global Assessment of Functioning scores. After reviewing the evidence of record, the Board explained:

> [T]he Board finds that these symptoms reflect a level of impairment that most closely approximates a 70 percent disability rating throughout the entire period on appeal. As noted in the rating criteria listed above, symptoms such as suicidal ideation, impaired impulse control, and difficulty in adapting to stressful circumstances are contemplated by the 70 percent disability evaluation. In addition, deficiencies in work, thinking, and mood are noted throughout the period on appeal, and serious deficiencies in these areas are also appropriately compensated by the 70 percent evaluation.

> While these records demonstrate significant impairment, they do not show the total occupational and social impairment required for a 100 percent disability evaluation. While [Mr. Mayhue] experienced significant problems getting along with his supervisor at work, records reflect that his main difficulties working at the store arose from a hand disability rather than [post-traumatic stress disorder]. The Board also notes that [Mr. Mayhue] appeared to have been in a stable relationship and had a good relationship with his children. He spent time on activities with his stepson, and he had a good relationship with his other children.

> The record reflects that [Mr. Mayhue] demonstrates symptoms of the 70 percent rating criteria, including auditory hallucinations, difficulty in adapting to stressful circumstances, and suicidal ideation. However, the Board notes that [he] does not exhibit many symptoms of the 70 percent rating, including obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; spatial disorientation; or neglect of personal appearance and hygiene. The Board realizes that the symptoms noted in the rating criteria are not intended to be an exhaustive list, but are examples of the types and severity of symptoms that indicate a certain level of disability. However, the Board believes that the overall severity of the veteran's symptoms, when taking into account both the symptoms that satisfy the 100 percent criteria and those that do not rise to the level of the 70 percent rating, most closely satisfies the 70 percent rating criteria.

13

R. at 24-25. This discussion demonstrates that the Board, in fact, considered the "serious symptoms of social and occupation[al] impairment" that Mr. Mayhue's Global Assessment of Functioning scores represent. Appellant's Br. at 16. Moreover, it is clear from the preceding discussion that Mr. Mayhue's contention that "there is no reference concerning why the rating criteria for a 100% rating did not more nearly approximate Mr. Mayhue's disability picture" is simply incorrect. Because the Board thoroughly discussed Mr. Mayhue's disability picture and explained why his symptoms more nearly approximate a 70% disability rating than a 100% disability rating, the Court concludes that the Board's statement of reasons or bases for its determination that Mr. Mayhue was not entitled to an initial disability rating for post-traumatic stress disorder in excess of 70% was adequate. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, 1 Vet.App. at 57.

## III. CONCLUSION

On consideration of the foregoing, the portions of the September 12, 2008, Board decision that denied entitlement to earlier effective dates for post-traumatic stress disorder and a total disability rating based on individual unemployability are VACATED and the matters are REMANDED for readjudication consistent with this decision. The remainder of the Board decision is AFFIRMED.

14