LANCE, Judge,
dissenting in part:
I fully agree with the majority that Mr. Cline is not entitled to an increased disability rating for his post-traumatic stress *29 disorder (PTSD). However, as I believe that amended § 3.156(c)(2) does not have an impermissible retroactive effect, I would affirm, rather than remand, the Board’s determination as to the proper effective date for the award of service connection for PTSD, and so I must respectfully dissent on that issue.
When VA amended § 3.156(c), it did not do so in a vacuum. Rather, as the Secretary made clear in his Federal Register notice proposing the amended regulation, VA’s intent was to combine the provisions of § 3.156(c) with those of § 3.400(q)(2) and, in so doing, clarify existing VA practice to preclude a less favorable reading of those regulations. See 70 Fed.Reg. 35,388, 35,388 (June 20, 2005) (“We propose to include the substance of current [§ ] 3.400(q)(2) in revised § 3.156(c).”). Thus, to ascertain whether § 3.156(c)(2) represents a substantive change, it must be compared not just to pre-amendment § 3.156(c) but also to § 3.400(q)(2).
Pre-amendment § 3.400(q)(2), which governs the effective date for service connection after the discovery of previously unavailable service department records, states that VA will grant an earlier effective date on the basis of relevant service department records “since it is considered these records were lost or mislaid.” 38 C.F.R. § 3.400(q)(2) (2005); see also § 3.156(c) (2005) (“This comprehends official service department records which presumably have been misplaced and have now been located and forwarded to [VA].”). In other words, under the plain language of pre-amendment §§ 3.156(c) and 3.400(q)(2), entitlement to an earlier effective date on the basis of newly discovered service records hinges on whether those records were lost or missing at the time of the original decision.
Nothing in the regulatory history contradicts this plain meaning; indeed, the Secretary’s statements indicate that he intended the amendments to liberalize, not restrict, the situations under which a claimant could be entitled to an earlier effective date:
Even though the current language can he read as a limitation, in practice, VA does not limit its reconsideration to “misplaced” service department records. Rather, VA intended the reference to misplaced records as an example of the type of service department records that may have been unavailable when it issued a decision on a claim. The proposed revision to § 3.156(c) removes this ambiguity.
70 Fed.Reg. at 35,388 (emphasis added); see also Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (noting that deference must be afforded to an agency’s interpretation of a regulation); Smith v. Nicholson, 451 F.3d 1344, 1349-50 (Fed.Cir.2006) (the Secretary’s interpretation of his own regulations is “ ‘of controlling weight unless it is plainly erroneous or inconsistent with the regulation’ ” (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945))).
In short, both the plain meaning of the regulations and the Secretary’s statements of intent make clear that the 2006 amendments were intended to liberalize § 3.156(c) to reflect VA practice, and that § 3.156(c)(2), rather than creating a bar to existing relief, was designed only to limit the reach of the liberalization. The majority ignores this distinction by focusing on the use of the word “would” in the Secretary’s description of the effects of amended § 3.156(c)(2), see ante at 22-25. However, when viewed in light of my analysis above, it is clear that use of the word “would” merely signifies the Secretary’s intent to limit the scope of the proposed liberalization.
*30 Neither Vigil v. Peake, 22 Vet.App. 63 (2008), nor Mayhue v. Shinseki, 24 Vet.App. 273 (2011), contradict this view. In Vigil, the Court held only that unit records fell within the category of records contemplated by pre-amendment § 3.156(c). 22 Vet.App. at 66. It did not, however, interpret the provisions of § 3.400(q)(2), nor did it discuss under what situations § 3.156(c) was for application. Compare id. at 66 n. 3 (“[W]e are not holding that § 3.156(c) warrants an earlier effective date in this case ... or that § 3.156(c) necessarily is for application here.”) with id. at 67 (Lance, J., dissenting) (“I believe that unavailable service records are those that VA had a duty to seek and, for whatever reason, was not able to obtain”). Similarly, Mayhue, as the majority notes, explicitly declined to reach the issue of whether amended § 3.156(c)(2) has an impermissible retroactive effect. 24 Vet.App. at 279.
Thus, as I read pre-amendment §§ 3.156(c) and 3.400(q)(2), VA technically had no duty to readjudicate claims based on newly discovered service department records unless those records were lost or unavailable at the time of the original decision. Given this interpretation of these regulations, I would hold that amended § 3.156(c)(2) does not have an impermissible retroactive effect, as it does not represent a departure from the pre-amendment regulations. In particular, reading pre-amendment §§ 3.156(c) and 3.400(q)(2) as applying only to records that were lost or missing at the time of the original decision forecloses application of those regulations to records that were not before VA for other reasons, such as negligence on the part of the Department of Defense or National Archives and Records Administration in forwarding records to VA, failure by VA to request adequately identified records, or where VA had no duty to obtain the records, either due to a claimant’s failure to adequately identify records or because the duty did not otherwise arise.
Although the Secretary specifically clarified that amended § 3.156(c) applied in cases of administrative error, he did not extend this liberalization to records not obtained by VA due to an appellant’s failure to adequately identify them. See 70 Fed.Reg. at 35,389 (“This limitation would allow VA to reconsider decisions and retroactively evaluate disability in a fair manner, on the basis that a claimant should not be harmed by an administrative deficiency of the government.”). Thus, in cases where an appellant did not adequately identify relevant unit records, neither the pre-amendment nor amended regulations allows for an earlier effective date on the basis of those records, and so amended § 3.156(c)(2) does not represent a change in the substance of the law.
Here, there is no indication that the appellant’s unit records were lost or missing at the time of the 1993 decision. Rather, VA simply had no duty to obtain those records. Under the laws and regulations at the time of the 1993 decision, VA had no duty to assist a claimant unless there was a well-grounded claim. See Morton v. West, 12 Vet.App. 477, 486 (1999), withdrawn, Morton v. Gober, 14 Vet.App. 174 (2000) (per curiam order), and superseded by statute, Veterans Claims Assistance Act of 2000 (VCAA), Pub L. No. 106-475, 114 Stat. 2096, as recognized in Duenas v. Principi, 18 Vet.App. 512 (2004). For a claim to be well grounded, the record had to contain (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and the current disability. See Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. *31 Cir.1996) (table), superseded by statute, VCAA, as recognized in Dueñas, supra. Absent a diagnosis of PTSD, the appellant’s claim was not well grounded, and so VA had no duty to assist him in obtaining his unit records. See Morton and Caluza, both supra.
In the alternative, even were I to read the 1993 RO decision as implicitly finding that the appellant’s claim was well grounded, I would hold that the Board did not clearly err when it determined that VA lacked sufficient information in 1993 to verify the appellant’s stressor. R. at 13; see 38 U.S.C. § 7261(a)(4); Hood v. Shinseki, 23 Vet.App. 295, 299 (2009) (holding that the Court reviews the Board’s factual findings under the “clearly erroneous” standard). In either case, VA had no duty to obtain the appellant’s unit records at the time of the 1993 decision, and so neither pre-amendment nor current § 3.156(c) is for application. See 38 C.F.R. § 3.159(c)(2)(i) (2012) (“The claimant must cooperate fully with VA’s reasonable efforts to obtain relevant records” by providing “enough information to identify and locate the existing records”); 38 C.F.R. § 3.159(b) (1993) (“When information sufficient to identify and locate necessary evidence is of record, [VA] shall assist a claimant by requesting ... existing evidence which is either in the custody of military authorities or maintained by another Federal agency.”).
Although Title 38 is generous to veterans in many ways, there is simply no apparent reason why claimants who failed to provide sufficient information to even trigger the duty to assist should receive uniquely favorable effective date treatment where the evidence that they could have identified consists of service department records. Instead, VA’s interpretation of its regulations — that such favorable treatment is limited to those whose claims are frustrated through no fault of their own— is logical and reasonable and deserves deference. Accordingly, I would affirm the Board’s decision on the issue of entitlement to an earlier effective date and must, therefore, respectfully dissent from the majority opinion on that matter.