﻿Citation Nr: 18142028
Decision Date: 10/12/18 Archive Date: 10/12/18

DOCKET NO. 16-40 021
DATE: October 12, 2018
ORDER
Entitlement to service connection for glaucoma and torn inferior oblique, claimed as impaired vision, is denied.
REMANDED
Entitlement to service connection for a low back condition, to include as secondary to service connected bilateral knee conditions is remanded.
Entitlement to service connection for a neck condition, to include as secondary to service connection bilateral knee conditions, is remanded.
Entitlement to service connection for chronic pain of the left lower extremity, to include as due to a low back condition, is remanded.
Entitlement to service connection for chronic pain of the right lower extremity, to include as due to a low back condition, is remanded.
Entitlement to service connection for erectile dysfunction, to include as due to a low back condition, is remanded.
Entitlement to service connection for a bilateral hearing loss disability, is remanded.

Entitlement to a total disability rating based upon individual unemployability (TDIU) is remanded.
FINDING OF FACT
A preponderance of the evidence is against a finding that the Veteran’s glaucoma and torn inferior oblique, claimed as impaired vision, is related to his active service.
CONCLUSION OF LAW
The criteria for entitlement to service connection for glaucoma and torn inferior oblique, claimed as impaired vision, have not been met. 38 U.S.C. §§ 1110, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The issues on appeal the Board stem from multiple rating decisions from the RO. In February 2001, the RO denied the Veteran’s low back condition claim because, “this condition was neither incurred in nor was caused by service.” The Veteran did not present new evidence or submit a timely notice of disagreement within one year of this decision. 
In August 2002, the RO denied the Veteran’s impaired vision claim because, “this condition was neither incurred in nor was caused by service.” The Veteran did not present new evidence or submit a timely notice of disagreement within one year of this decision. 
In November 2012, the RO denied the Veteran’s bilateral hearing loss claim because, “[the Veteran] did not currently meet the criteria for hearing loss for VA purposes.” The Veteran did not present new evidence or submit a timely notice of disagreement within one year of this decision. 
In a separate November 2012 rating decision, the RO denied the Veteran’s neck condition, chronic bilateral leg and groin pain and erectile dysfunction claims because, “[his] service treatment records do not contain complaints, treatment or diagnosis for [a neck condition and erectile dysfunction]” and “the evidence does not show a current diagnosed disability [for bilateral chronic leg and groin pain].” The Veteran did not present new evidence or submit a timely notice of disagreement within one year of this decision. 
Ordinarily, under such circumstances, the February 2001, August 2002 and November 2012 rating decisions would become final. 
However, it appears that additional service treatment records (STR) have been received since the February 2001, August 2002 and November 2012 rating decisions that are pertinent to the Veteran’s low back condition, impaired vision, bilateral hearing loss, neck condition, chronic bilateral leg and groin pain and erectile dysfunction claims. After the final February 2001, August 2002 and November 2012 rating decisions, the RO appears to have obtained additional missing STRs. Significantly, these missing STRs dated from February 1975 to June 1980 revealed additional in-service treatment and clinical notations relevant to the low back, impaired vision, bilateral hearing loss, neck condition, chronic bilateral leg and groin pain and erectile dysfunction claims on appeal. 
Under 38 C.F.R. § 3.156 (c), at any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will “reconsider” the claim, notwithstanding paragraph (a) of the same section (which defines new and material evidence). See 38 C.F.R. § 3.156 (c)(1). If VA thereafter makes an award based in whole or in part on these newly associated service department records, the assigned effective date will be “the date entitlement arose or the date VA received the previously decided claim, whichever is later.” 38 C.F.R. § 3.156 (c)(3); see Mayhue v. Shinseki, 24 Vet. App. 273, 279 (2011) (“[A] claimant whose claim is reconsidered based on newly discovered service department records may be entitled to an effective date as early as the date of the original claim.”). “In this sense,” the Court has said of the operation of § 3.156(c), “the original claim is not just re-opened, it is reconsidered and serves as the date of the claim and the earliest date for which benefits maybe granted.” Vigil v. Peake, 22 Vet. App. 63, 66-67 (2008). 
Under such circumstances, the claim is not treated as a new and material evidence claim (see § 3.156(a)), or a clear and unmistakable error (“CUE”) claim (see § 3.105(a)), but rather, is governed by § 3.156(c). The regulation further identifies service records that are related to a claimed in-service event, injury, or disease as “relevant” service department records. 38 C.F.R. § 3.156 (c)(1)(i).
In accordance with 38 C.F.R. § 3.156 (c), new and material evidence is not needed to reopen the previously denied low back, impaired vision, bilateral hearing loss, neck condition, chronic bilateral leg and groin pain and erectile dysfunction claims, when relevant STRs and/or any other relevant service department records are received after a prior final denial. Rather, the claim at issue is simply reviewed on a de novo basis. Besides not having to submit new and material evidence, the benefit of this provision is to assign the earliest possible effective date without the claimant having to demonstrate clear and unmistakable error in a prior final determination, if the claims end up being granted.
Service Connection
In seeking VA disability compensation, a Veteran generally seeks to establish that a current disability results from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110. “Service connection” basically means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 C.F.R. § 3.303.
Establishing service connection generally requires competent evidence showing: (1) the existence of a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 
Service connection can also be granted for certain chronic diseases if manifest to a degree of 10 percent or more within one year of separation from active service. 38 U.S.C. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2017). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word chronic. Continuity of symptomatology is required only where the condition noted during service is not shown to be chronic or when the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303 (b) (2017). 
Continuity of symptomatology applies to those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309 (a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).
Therefore, the Veteran’s claim for entitlement to service connection will be evaluated under the general VA rules and regulations discussed above. 
The determination of whether the requirements of service connection have been met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). In making these determinations, the Board must consider and assess the credibility and weight of all evidence in the claim file, including the medical and lay evidence, to determine its probative value. In doing so, the Board must provide its reasoning for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Barr v. Nicholson, 21 Vet. App. 303 (2007).
When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each issue shall be given to the claimant. See 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3. A claimant need only demonstrate an approximate balance of positive and negative evidence in order to prevail. See Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). For a claim to be denied on the merits, a preponderance of the evidence must be against the claim. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996).
1. Entitlement to service connection for glaucoma and torn inferior oblique, claimed as impaired vision
The Veteran contends that he is entitled to service connection for partial blindness due to a fall from a truck in service. 
The Veteran STRs show that he fell off of a truck in December 1979. During his June 2018 Board hearing, the Veteran testified that he began having symptoms associated with vision loss after his December 1979 fall. 
His STRs show that he was treated for swollen eyes in August 1979 and conjunctivitis in December 1979. 
An August 2008 private treatment record diagnosed the Veteran with left eye blindness, refractive error, right eye cataract and normal right eye exam for age. The physician noted that the eye exam revealed no pathology.
In May 2014 the Veteran underwent a private eye examination and was diagnosed with left eye blindness and right eye low vision. The examiner noted that the etiology was not clear. He opined that he needed old records and suspected intracranial pathology, likely from when the Veteran was in service. He would need more documentation from past exams to determine the etiology. 
The May 2014 examiner concluded that one cannot say exactly how long this condition existed prior to the date of diagnosis or definitively state its cause. However, it is as likely that the Veteran’s documented in-service eye issues mark the onset, cause or contribute to his current blindness and glaucoma. 
In August 2017 the Veteran underwent a VA eye examination. The Veteran was diagnosed with legal blindness, chronic anterior uveitis and cataract. There was an additional diagnosis of history of pupillary block glaucoma of the left eye. 
Upon a review of the Veteran’s claim’s file and an in-person examination, the August 2017 VA examiner determined that the Veteran’s right eye anterior uveitis was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. The examiner reasoned that the Veteran’s right eye has had recurrent anterior uveitis and this is related to a systemic problem and not a result of military service. 
The August 2017 VA examiner also concluded that the Veteran left eye blindness was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. She reasoned that the Veteran’s left eye blindness was due to an unexplained neurological deficit. 
In addition, the examiner found that the Veteran’s cataracts were less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. She reasoned that cataracts are the result of age. 
Lastly, the examiner found that the Veteran’s chronic recurrent anterior uveitis was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service event or illness. Her rationale was that his recurrent anterior uveitis is the cause of the glaucoma which is not a service related malady. The uveitis is an inflammatory issue that is related to a systemic problem.
The Board has not overlooked the Veteran’s lay statements with regard to the etiology of eye conditions. He is competent to report on factual matters of which he had firsthand knowledge; and the Board finds that his reports concerning symptomatology have been credible. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, there is no basis for concluding that a layperson such as the Veteran is competent of determining the etiology of his eye conditions and whether it was related to active service, in the absence of specialized medical training, which in this case he has not established. 38 U.S.C. § 1153 (a) (West 2014); 38 C.F.R. §§ 3.303 (a), 3.159(a) (2016); Jandreau v. Nicholson, supra; Buchanan v. Nicholson, supra. 
As such, the objective medical findings and negative nexus opinion provided by the August 2017 VA examination report have been accorded greater probative weight than the May 2014 private examination in determining that service connection is not warranted. The Board has reached this conclusion because the August 2017 examiner reviewed a claims file complete with STRs, made repeated references to pertinent past records and statements, and provided detailed rationales for her opinions. The Board concludes that the preponderance of the evidence is against service connection for a skin condition on a direct basis. 38 U.S.C. § 5107 (b) (West 2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
On the basis of the above analysis, the preponderance of the evidence is against the claim for service connection for a skin condition, and the claim must be denied.
REASONS FOR REMAND
1. Entitlement to service connection for a low back condition, to include as secondary to service connected bilateral knee conditions, is remanded.
The Veteran is seeking entitlement to service connection for a low back condition to include as secondary to service connected bilateral knee conditions. 
During his June 2018 Board hearing the Veteran claimed that he injured his back in service falling off of a truck. A December 1979 STR reflects that the Veteran sought treatment after falling off of a truck. Multiple STRs, including a May 1980 record, reflect that the Veteran sought treatment for low back pain. 
A May 2018 VA treatment record reflects that the Veteran has been diagnosed with degenerative disc disease of L4 – L5. 
With respect to the claims of service connection for a low back disability, the Board believes that a VA examination is necessary to obtain appropriate medical opinions addressing the etiology of this condition. See generally 38 C.F.R. § 3.159 (c)(4) (2017); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006).
2. Entitlement to service connection for a neck condition, to include as secondary to service connection bilateral knee conditions, is remanded.
The Veteran is seeking entitlement to service connection for a neck condition to include as secondary to service connected bilateral knee conditions. 
During his June 2018 Board hearing the Veteran claimed that he injured his neck in service falling off of a truck. A December 1979 STR reflects that the Veteran sought treatment after falling off of a truck. 
A May 2015 VA treatment record reflects a diagnosis of moderate cervical spondylosis with multilevel neural foraminal narrowing. 
With respect to the claims of service connection for a neck disability, the Board believes that a VA examination is necessary to obtain appropriate medical opinions addressing the etiology of this condition. See generally 38 C.F.R. § 3.159 (c)(4) (2017); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006).
3. Entitlement to service connection for chronic pain of the left lower extremity, to include as due to a low back condition, is remanded.
4. Entitlement to service connection for chronic pain of the right lower extremity, to include as due to a low back condition, is remanded.
The Veteran is seeking entitlement to service connection for bilateral chronic pain of the lower extremities, to include as secondary to a low back condition. 
The Veteran claims that he has suffered from chronic lower extremity pain since service when he fell off of a truck in December 1979. A December 1979 STR reflects that he sought treatment for chronic leg pain. 
Although the Veteran was afforded an October 2011 VA examination for bilateral lower extremity condition claims, as noted above, additional STRs have been associated with the record since the October 2011 VA examination. 
With respect to the claims of service connection for bilateral chronic pain of the lower extremities, the Board believes that a VA examination is necessary to obtain appropriate medical opinions addressing the etiology of this condition. See generally 38 C.F.R. § 3.159 (c)(4) (2017); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006).
5. Entitlement to service connection for erectile dysfunction, to include as due to a low back condition, is remanded.
The Veteran’s May 2016 VA treatment records show a diagnosis of erectile dysfunction. Furthermore, during his June 2017 hearing testimony, the Veteran also testified that he his erectile dysfunction worsens in conjunction with his lower back condition. His August 1980 separation examination also notes that the Veteran was treated for venereal disease, syphilis, gonorrhea, etc. during service. 
The Veteran has not been afforded a VA examination to determine the nature and etiology of any diagnosed erectile dysfunction. Upon remand, one should be provided. The examiner should determine if any diagnosed erectile dysfunction is directly etiologically related to the Veteran’s military service. If the Veteran is diagnosed with any low back disorder, the examiner should also address whether such a disorder has caused or aggravated any diagnosed erectile dysfunction.
6. Entitlement to service connection for bilateral hearing loss disability
VA’s duty to assist includes providing a thorough and contemporaneous medical examination, especially where it is necessary to determine the current level of severity of a disability. Peters v. Brown, 6 Vet. App. 540, 542 (1994). 
The Board notes that the Veteran was last afforded a VA examination to assess the severity of his bilateral hearing loss in September 2014, which did not show bilateral hearing loss for VA purposes. 38 C.F.R. § 3.385 (2017). Since that examination, the record reflects that the Veteran’s hearing loss may have increased in severity. Specifically, the Veteran testified during his June 2018 Board hearing that he has since been prescribed hearing aids. Given that the Veteran’s hearing loss claim was denied because he did not meet auditory thresholds of hearing loss pursuant to 38 C.F.R. § 3.385, the Board finds that a new examination is appropriate as there is evidence of an increase in severity since the last examination. Therefore, the Veteran should be afforded another examination on remand. See 38 C.F.R. § 3.159 (2017); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Palczewski v. Nicholson, 21 Vet. App. 174, 181 (2007); Snuffer v. Gober, 10 Vet. App. 400, 403 (1997); VAOPGCPREC 11-95 (1995) 
7. Entitlement to a total disability rating based upon individual unemployability is remanded.
The Board finds that the claim of entitlement to TDIU is inextricably intertwined with the claims for service connection for low back condition, neck condition, bilateral chronic pain of the lower extremities, erectile dysfunction and bilateral hearing loss. All issues “inextricably intertwined” with the issue certified for appeal, are to be identified and developed prior to appellate review. Harris v. Derwinski, 1 Vet. App. 180 (1991). The issue of entitlement to TDIU is intertwined with the service connection claim because a decision on the latter claim may have an impact on the former claim. Thus, the claim of entitlement to TDIU must be remanded for the appropriate development, as well as contemporaneous adjudication. Id.
The matters are REMANDED for the following action:
1. The AOJ should contact the Veteran, and, with his assistance, identify any additional outstanding records of pertinent medical treatment from VA or private health care providers. Follow the procedures for obtaining the records set forth by 38 C.F.R. § 3.159 (c). 
If VA attempts to obtain any outstanding records which are unavailable, the Veteran should be notified in accordance with 38 C.F.R. § 3.159 (e).
2. After any additional development deemed necessary is completed, provide the claims file to an appropriate VA examiner for a VA examination to determine the etiology of the Veteran’s low back condition to include as secondary to his service-connected bilateral knee conditions. The claims file must be made available to the examiner(s) (including this Remand) and all indicated studies should be performed. Based on examination and review of the record, the examiner(s) should offer an opinion as to the following: 
a). Is it at least as likely as not (50 percent probability or greater) that any current low back condition is caused or aggravated by his active duty service?
b). Is it at least as likely as not (50 percent probability or greater) that any current low back condition is caused or aggravated by his service-connected bilateral knee conditions? 
All opinions provided must be thoroughly explained, and an adequate rationale for any conclusions reached should be provided. The VA examiner must reconcile his or her findings with clinical evidence of record.
3. Provide the claims file to an appropriate VA examiner for a VA examination to determine the etiology of the Veteran’s neck condition to include as secondary to his service-connected bilateral knee conditions. The claims file must be made available to the examiner(s) (including this Remand) and all indicated studies should be performed. Based on examination and review of the record, the examiner(s) should offer an opinion as to the following: 
a). Is it at least as likely as not (50 percent probability or greater) that any current neck condition is caused or aggravated by his active duty service?
b). Is it at least as likely as not (50 percent probability or greater) that any current neck condition is caused or aggravated by his service-connected bilateral knee conditions? 
All opinions provided must be thoroughly explained, and an adequate rationale for any conclusions reached should be provided. The VA examiner must reconcile his or her findings with clinical evidence of record.
4. Provide the claims file to an appropriate VA examiner for a VA examination to determine the etiology of the Veteran’s claimed bilateral chronic pain of the lower extremities to include as secondary to a low back condition. The claims file must be made available to the examiner(s) (including this Remand) and all indicated studies should be performed. Based on examination and review of the record, the examiner(s) should offer an opinion as to the following: 
a). Is it at least as likely as not (50 percent probability or greater) that any bilateral chronic pain of the lower extremities is caused or aggravated by his active duty service?
b). Is it at least as likely as not (50 percent probability or greater) that any current bilateral chronic pain of the lower extremities is caused or aggravated by a low back condition? 
All opinions provided must be thoroughly explained, and an adequate rationale for any conclusions reached should be provided. The VA examiner must reconcile his or her findings with clinical evidence of record.
5. Schedule the Veteran for a VA examination by an appropriate examiner to determine the nature and etiology of any diagnosed erectile dysfunction. The examiner must review the Veteran’s Virtual VA and VBMS files. All clinical findings must be reported in detail and correlated to a specific diagnosis. 
Following the examination, the examiner must opine as to whether it is at least as likely as not (50 percent or greater possibility) that any erectile dysfunction is etiologically related to or aggravated by service. A complete rationale must be provided for these opinions.
Further, if the Veteran has any diagnosed acquired low back condition, the examiner must opine as to whether it is at least as likely as not (50 percent or greater possibility) that any diagnosed erectile dysfunction is etiologically related to or aggravated by such a disorder.
6. Schedule the Veteran for an examination to determine the nature and etiology of any current hearing loss. The claims folder must be thoroughly reviewed by the examiner in connection with the examination, and such review must be reflected on the examination report. A complete history should be elicited directly from the Veteran. Any tests and studies deemed necessary by the examiner should be conducted. All findings should be reported in detail. An explanation for each opinion shall be provided. 
The examiner must provide an opinion as to whether it is at least as likely as not (50 percent probability or greater) that any current hearing loss is causally or etiologically related to the Veteran’s military service, including noise exposure therein (i.e., did in-service noise exposure cause the Veteran to progressively lose his hearing over the years).
It should be noted that the Veteran is competent to attest to observable symptomatology. The examiner’s attention is invited to the Veteran’s statements concerning the onset of his claimed disabilities. The examiner is reminded that a medical opinion based solely on the absence of documentation in the record or that does not take into account the Veteran’s reports of symptoms and history is inadequate. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation
In rendering the above opinions, the examiner is advised that the absence of in-service evidence of a hearing disability during service is not always fatal to a service connection claim. Evidence of a current hearing loss disability and a medically sound basis for attributing that disability to service may serve as a basis for a grant of service connection for hearing loss where there is credible evidence of acoustic trauma due to significant noise exposure in service, post-service audiometric findings meeting the regulatory requirements for hearing loss disability for VA purposes, and a medically sound basis upon which to attribute the post-service findings to the injury in service. 
If the examiner feels that the requested opinions cannot be rendered without resorting to speculation, the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge or by a deficiency in the record or the examiner.
7. Then, the AOJ should readjudicate the claims on remand, to include entitlement to TDIU. If the benefits sought remains denied, the AOJ should issue an SSOC to the Veteran affording a reasonable opportunity to respond before the record is returned to the Board.

 
DAVID L. WIGHT
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD J. Nelson, Associate Counsel